LEWIS OUELETTE *vs.* FRANK PLUFF.

ALEXANDER LAPOINTE, and others, *vs.* SAME, and Wood.

Androscoggin.    Opinion July 31, 1899.

*Lien.   Action.   Judgment.   R. S., c. 91, §§ 29, 38.*

Where a person performs labor in cutting cord-wood and lumber (logs) from a tract of land and sawing and piling the same, he may, in an action to enforce a lien for his services, have a single in rem judgment against both the wood and the lumber, although the laborer's lien on lumber and that on cord-wood were established at different times by different legislatures; the two liens in the circumstances of the case, becoming amalgamated and in effect one.

Where three men were employed to work together in clearing the growth from a parcel of wood-land, each to have seventy-five cents per cord for such

amount as should be cut by himself, the men working separately but piling the wood and lumber indiscriminately together on the land under the direction or with the assent of their employer, a joint action may be maintained by the three, personally against the employer and in rem against the wood and lumber cut by them, for their services. The defendant admits his liability by consenting to a default if the lien be not maintained.

AGREED STATEMENT.

This was an action of assumpsit upon an account annexed as follows:

" Frank Pluff to Alexander, Ernest and Charles Lapointe, Dr.

For cutting 184 19-24 cords of wood and lumber in 4 foot lengths on lot of land above described at $.75 per cord,        $138.59."

The officer was directed by the writ to attach "the goods and estate of Frank Pluff, of Lewiston, in our said county of Androscoggin, and particularly and especially 224 tiers of hard and soft, cleft and round, cord-wood and pine bolts or lumber, containing about 184 19-24 cords, cut in length of 4 feet, and each tier having 3 sticks therein marked on the scarf or end with a red chalk the letter H. the same being situated on a lot of land owned by one Annie H. Garcelon, situated in said Lewiston and bounded as follows, to wit: Lot No. 11 and part of Lot No. 10 in said Lewiston, more fully described in deed from said Annie H. Garcelon to R. C. Boothby, dated Feb. 20, 1897, recorded in Androscoggin County Registry of Deeds, book 173, page 121, which deed and record are hereby made a part of this description, and which said lot, is known as the Daniel Holland wood lot, that part of said premises in which the wood is piled being more particularly known as the Larrabee lot and lying South-easterly of Emma J. Read's farm. And which said wood belongs to one R. C. Boothby, of East Livermore, in said county, or to persons unknown."

The declaration is in the usual form of a declaration upon an account annexed, and further alleges that " this action is brought under §§ 29 and 38 of chapter 91 of the Revised Statutes of the State of Maine, as amended, for the purpose of enforcing the lien of said Alex., Ernest and Charles Lapointe upon said cord-wood and lumber for the amount due for their personal services, in cut-

ting said cord-wood under contract with the said Frank Pluff, who is not the owner thereof, but which said cord-wood is owned by the said R. C. Boothby, or parties unknown."

The writ was dated the tenth day of December one thousand eight hundred and ninety-seven, and was made returnable to the January term of the Municipal Court for the City of Auburn. The officer's return stated that on the twenty-ninth day of December, A. D. 1897, he attached "224 tiers cord-wood and pine bolts marked the letter H containing about 184 cords and piled on land of Annie H. Garcelon and known as the Daniel Holland wood-lot and situated in Lewiston in said County, and South-easterly of the farm of Henry A. Read, and said wood and bolts belong to R. C. Boothby or parties unknown. This suit is brought to enforce the plaintiffs' lien claim for cutting and piling said wood and bolts."

At the return term of said writ, R. C. Boothby, the owner of the property on which the lien is claimed, voluntarily appeared and became a party to said suit. The said Pluff and Boothby pleaded the general issue, and the said R. C. Boothby also filed a brief statement denying that any lien had attached to the property attached on said writ, and that if the plaintiffs ever had any lien for their personal services upon the property attached on said writ, said lien is waived by the plaintiffs.

The judge of the Municipal Court, upon trial, rendered judgment in favor of the plaintiffs for one hundred and nine dollars and fifty-five cents ($109.55), and adjudged that the plaintiffs had a lien therefor upon the wood and lumber described in said writ. The said Boothby seasonably appealed to this court, sitting below at nisi prius. This action was one of sixteen actions now pending by different plaintiffs, to enforce alleged liens upon wood cut upon the same premises described in this writ.

For the purposes of this report only, it was agreed that the facts are as follows: "But it is expressly stipulated by all parties hereto that this agreement as to the facts shall not be construed to be an admission of such facts binding in any subsequent proceeding in any other of the sixteen suits above named, and said facts are agreed upon for the purposes of this report only.

"It is agreed that R. C. Boothby, who became a party to said suit, as aforesaid, was the owner of the wood and lumber upon the premises described in said writ, and that he contracted with said Pluff to cut the same. That Pluff hired the plaintiffs to cut upon said wood lot, and agreed to give each of them seventy-five cents a cord for cutting, sawing and piling the wood and lumber, and that the plaintiffs together cut the number of cords specified in their writ, and piled the same in two hundred and twenty-four piles or tiers, as therein stated. Before the plaintiffs began to cut, Pluff assigned to the plaintiffs a certain definite strip of the wood lot upon which plaintiffs were to cut, and upon which the 184 19-24 cords were afterwards cut. In cutting upon said strip, each plaintiff worked by himself upon separate trees, and not upon the same trees, except that in sawing up the pine logs two plaintiffs worked together with the cross-cut saw, but the wood and bolts so cut by each plaintiff were piled by each together with that cut by the other plaintiffs into the 224 piles, and all were marked in the manner described in the writ. A portion of said piles consisted of ordinary round and cleft, hard and soft wood, cut in lengths of four feet for firewood; the remainder of said piles consisted of pine logs sawed into lengths of fifty-two inches, sixty-eight inches and seventy-two inches, called bolts, and these bolts were left in the round log suitable for conversion into manufactured lumber. And if the fact is in the opinion of the court admissible, it is agreed that said logs were so sawed to render them suitable for manufacturing into box boards, and that they were sold for that purpose. None of the bolts were cut in lengths of four feet.

"It is further agreed that the attachment of said property on this writ was made within thirty days after plaintiffs ceased to perform any labor upon the wood and lumber in question, and that the two hundred and twenty-four piles attached by the officer, marked II. was the same wood cut by the plaintiffs in the manner aforesaid. The owner of the wood and lumber, R. C. Boothby, paid Pluff for the cutting, and plaintiffs have not been paid.

"If upon the foregoing facts the law court is of the opinion that the plaintiffs are entitled to judgment against the property

attached, the cause is to stand for trial; otherwise, judgment shall be rendered, against the defendant Pluff alone for the amount found due by the judge of the court below, and not against the property attached.

It is agreed that four other suits, prosecuted by various plaintiffs against said Pluff, Nos. 545, 549, 553 and 554, on the docket of this court for Androscoggin county, shall be continued without costs to abide the decision of the law court upon this report."

*W. H. Newell and W. B. Skelton*, for plaintiffs.

The only objections which can be raised under this report, are first, that these men worked together, when the statutes say it must be personal labor. Second, that the action purports to be under the two sections of the statutes. Third, that there was cordwood and pine bolts. To the first objection we say that they were partners, and under the contract, one ·person. To the second objection we say that while this is true, the amounts of wood and bolts respectively can be definitely ascertained. So that if the lien is perfected, the owner can redeem from either or both; and so far as the maintenance of the lien is concerned, the apportionment between the wood and bolts does not present the slightest difficulty. Third. There is a lien for each. Each can be definitely ascertained. And proper judgment can be apportioned between them. If the court should decide that both could not be maintained, then the case must of necessity be remanded for trial, because the plaintiffs have the right to amend the writ at any time before final judgment. See *Sands* v. *Sands*, 74 Maine, 239, and cases cited.

Lien statutes remedial: *Kelley* v. *Kelley*, 77 Maine, 135; *Murphy* v. *Adams*, 71 Maine, 113 (118); *Spofford* v. *True*, 33 Maine, 284. Apportionment of judgment: *Stratton* v. *Jarvis*, 8 Pet. 4.

*John A. Morrill*, for Boothby, owner.

The two enactments upon which the plaintiff relies are independent statutes. Section 29 gives a lien upon cord-wood for the labor spent in cutting it. It does not give a lien upon both cordwood and logs for the labor spent in cutting the cord-wood.

Section 38, in like manner, only gives a lien on logs and lumber for the labor spent in cutting such logs and lumber, but it does not give a lien upon cord-wood and logs for the labor spent in cutting the logs.

Any judgment which can be rendered for the entire amount of this claim against the property attached will include property upon which no lien exists by § 29; and will likewise include a claim for labor performed upon property other than that upon which the lien is given by that section; likewise, it will include property upon which no lien exists by § 38, and will also include a claim for labor performed upon property other than that upon which the lien is given by that section. A judgment under either section must, under the facts stated in the report, unite lien and non-lien items, contrary to the decisions of this court. *Coburn* v. *Kerswell*, 35 Maine, 126; *McCrillis* v. *Wilson*, 34 Maine, 286.

It is clear that the plaintiff might have easily ascertained how many piles and cords of cord-wood he had cut, and made a lien claim therefor under § 29. And likewise under § 38, he might have made a claim for the exact number of piles and cords of the logs which he had cut, and that is the only legal way in which his lien could be enforced. The log owner has the right undoubtedly to redeem from either lien at his option. The two liens cannot be intermingled and deprive him of that right. But each lien must be enforced, and the judgment must be so rendered that he can exercise his option to redeem one or both, as he may see fit, and to leave the plaintiff to enforce his judgment against one class of property or both, as he sees fit.

Having intermingled in the claim, under either section, property for which he has a lien under each section with property for which he has none, and likewise, having claimed a lien upon, and attached property upon which no lien is given by one section or the other, without any discrimination, the plaintiff is not entitled to a lien judgment against the whole property; and no valid lien judgment for his entire claim can be rendered.

It is manifestly impossible in Lapointe's case to render any valid judgment in rem. The statute gives a lien to a laborer for his

personal services upon the property upon which he labored. *Red-dington* v. *Frye*, 43 Maine, 578; *Coburn* v. *Kerswell*, 35 Maine, 126; *McCrillis* v. *Wilson*, 34 Maine, 286. There is no lien for labor performed by others. *Hale* v. *Brown*, 59 N. H. 551, 558.

There is no joint lien given by the statute. These plaintiffs should have kept their respective cuttings separate, and marked them with individual marks, if necessary, and then each could have maintained his action on his own claim, and the owner could have redeemed from either claim, as he has the undoubted right to do at his option.

The plaintiffs have so intermingled the wood and logs cut by each that the identity of their respective cuttings has been destroyed, and this intermingling has been caused by the action of the plaintiffs alone, without any participation express or implied on the part of the owner of the property, and accordingly the plaintiffs must stand the loss. *Spofford* v. *True*, 33 Maine, 283–295.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, STROUT, FOGLER, JJ.

PETERS, C. J. Two sets of claims and two cases are here presented together. In one case, *Ouelette* v. *Pluff*, the following facts are agreed upon: One Boothby, being the owner of a tract of land, contracted with Pluff to take the growth from it, the growth consisting of both hard and soft wood fitted for cord-wood only, and some short pine fitted for bolts from which shooks or heading could be manufactured. The plaintiff was hired by Pluff to help clear the tract, and he cut and piled 47 3-4 cords and piled the same in 41 piles, under an agreement that he should be paid for his labor at the rate of seventy-five cents per cord for all that he should cut and pile, no part of which payment has he ever received. He sues Pluff and seeks in the ordinary process to establish a judgment of lien against the property for his wages. The owner contends that no lien for the laborer's wages attaches against the common property, that is against the wood and the logs together, for the reason that the lien for cutting cord-wood and

that for cutting logs are two distinct and independent liens, granted at different times by separate enactments of the legislature.

The argument is that the owner has the privilege of redeeming the product cut under one lien without redeeming that cut under the other. If that be so, the purpose can be effectuated without any loss to the laborer by giving him separate judgments against the wood and lumber for the amounts respectively due on each. The kinds are easily separated and the case finds that the bolts and cord-wood are in separate piles. The idea of a double judgment, or a judgment in two parts, is sustained in the case of *Oliver* v. *Woodman*, 66 Maine, 54, where a judgment was allowed against different lots of logs separately according to different ownership. And the court there says: " The plaintiff's claim for services rendered upon the logs by contract with Woodman is entire and has been rightfully brought as such. But it does not follow that the judgment in rem must be against all the logs jointly. On the contrary, it must be apportioned upon the logs of the several owners according to their respective interests. This will do exact justice to all parties as in cases of salvage." The court in the same case further says: " Woodman having been defaulted, the plaintiff will be entitled to judgment against him for $379.05 and interest from the date of the writ, and a judgment in rem for that amount against all the logs, to be apportioned among the several parcels thereof according to the quantity of each owner, . . . . and costs to be apportioned in the same manner." So in the case at bar, judgment, if need be, could be awarded against all the materials cut and removed from the soil, to be apportioned upon the wood and lumber according to the quantity of each kind upon which the plaintiff's labor was expended.

But we are of opinion that, on the facts of this case, a single lien exists upon the wood and lumber taken together. The two liens became amalgamated,—became one. The circumstances require such a conclusion. The cuttings were at the same time, promiscuously on the same tract, at the same price, for the same party, and without any notice to the laborer of any unusual conditions. He could only see that he was engaged with others in

clearing a tract of land, cutting down the growth as he came to it, presumably not even deciding whether a tree as he felled it would go into wood or into lumber, leaving that question for the owner or surveyor. There is nothing indicating any selection of trees to be cut, but the entire growth was taken as the work proceeded. The contract with the laborer was simple and unqualified, that he was to go into the woods and cut down the growth as he came to it. One statute gives him a lien on pine, and another on cord-wood, and between the two he had a lien on all that was cut. As the owner made no distinction until the laborer's services were received and enjoyed by him, he should not be permitted to make any now. The idea of any desire to redeem any lien upon one sort of the cuttings and not upon another is the merest suggestion; although there is really an opportunity for the owner to do so, if desirable, as shown before.

Suppose a lien be provided by the legislature for a laborer who is engaged in cutting pine timber, and a lien is afterwards given for labor in cutting spruce, and still afterwards another for labor in cutting cedar and hemlock. Are there in such a case three different and separate liens, or is there but a single lien for all the work done on all the varieties of lumber named? It would no doubt be regarded as an extension of the lien first granted, an enlargement of its application merely. So here, under the circumstances of this case, we think there is only one lien affecting this transaction, while the result might not be the same under different conditions and relations.

An in rem process like the present is really an equitable procedure, largely governed by equitable principles. In *Shaw* v. *Young*, 87 Maine, 271, EMERY, J., says, speaking of in rem proceedings: "Courts will now construe them liberally to further their equity and efficacy when it is clear that the lien has been honestly earned, and the lien claimant is within the statute." Lord Eldon said in a case: "The difficulty must be overcome on this principle, that it is better to go as far as possible towards justice than to deny it altogether." The facts of this case make a strong appeal in behalf of the laborer. This is only one case of quite a number

in waiting, and for all the services of all the laborers not a cent has been received.

In the other case, (*Lapointe et als.* v. *Pluff and property,*) the same question arises as in the preceding case, and also an additional question.     In this case there are three plaintiffs instead of one. The three were hired by Pluff to cut upon a specified portion of the lot in question, Pluff assigning the parcel of territory upon which they were to jointly operate, agreeing to give each of them seventy-five cents per cord for the work done by him, and the three of them cut, sawed and piled two hundred and twenty-four piles of wood and lumber in all.     The plaintiffs worked separately, but piled their cuttings together.     The defense contends that there were three contracts instead of one, the plaintiff's contending there was but one.     While the transaction has some features of a separate contract we think it may fairly be construed as a joint contract.     To be sure, each was to be paid by Pluff for what he should do himself, but that would be a fair division of the proceeds of their labor even if the contract were a joint one.     They jointly undertook a specified piece of work on a specified tract, piling their cuttings together undoubtedly under the direction of their employer.     The plaintiffs had no means of identifying what was cut by each and put into the common piles, and the owner must either by design or acquiescence have known it to be so.

The employer Pluff cares nothing for his personal liability, for the case requires his default provided the property be not held. As to the property the process is no more or less than an equitable proceeding, and in equity there is no objection to joining homogeneous claims in one process.     To construe the contract of the plaintiffs as a joint contract can work no wrong or injury to any party.     It is our opinion that the plaintiffs are entitled to recover both against the person sued and the property attached.

By the agreement of submission the cases are to stand for trial.

*Actions to stand for trial.*